WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Modulus Global Incorporated,<br><br>  Plaintiff,<br><br>v.<br><br>Quintzy FZE LLC, et al.,<br><br>  Defendants. | No. CV-22-01457-PHX-GMS<br><br>**ORDER** |

Before the Court is Defendants Quintzy FZE LLC, Bloxeo Technology, Inc., Ankit Singhal, and Rajeev Sharma's Motion to Dismiss Counts IV, VI, VII, VIII, IX, and XI for failure to state a claim (Doc. 32).  For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

In this case, Modulus Global, Inc. ("Plaintiff") has sued various defendants for conduct related to misappropriating its source code and other documents.  Plaintiff is a provider of proprietary enterprise fintech products.  It alleges that it began developing a digital currency exchange in 2018, and by Fall 2018, it needed to develop a digital assets exchange and blockchain payment solution.  To do so, Plaintiff allegedly executed two agreements with software company Efficacious, and its owner Ankit Singhal.  The agreements, among other things, required Singhal to "devote his entire business time, attention, and efforts to the performance of his duties under [the] Agreement" and to "not

engage in any other employment." (Doc. 8 at 2-3.) Singhal also allegedly agreed to develop and write code for the Modulus software and that any software developed "would be the sole and exclusive property of Modulus." (Doc. 8 at 3.)

Plaintiff alleges that after the agreements, Singhal used the underlying source code that he developed for Modulus in developing the Quintzy Spot Exchange Software and/or Quintzy Derivatives Exchange that offers crypto exchange products in direct competition with Modulus at a cheaper cost. Plaintiff claims that Singhal and/or Quintzy offered these products to Modulus's existing or prospective clients. As a result, Plaintiff brought claims for breach of contract, misappropriation of trade secrets under Arizona and federal law, civil conspiracy to commit trade secret theft, breach of duty of loyalty, breach of fiduciary duty, trespass to chattels, intentional interference with a business expectancy, unfair competition and false designation of origin under the Lanham Act, false advertising under the Lanham Act, and common law unfair competition and trademark infringement.

## DISCUSSION

### I.     Legal Standard

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886-87 (9th Cir. 2020). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness. *Pareta v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). "A district court may dismiss a complaint only if it fails to state enough facts to state a claim to relief that is plausible on its face." *McShannock*, 976 F.3d at 887 (quoting *Twombly*, 550 U.S. at 570).

/ / /

**II.     Analysis**

**A.  Preemption (Counts IV, VI, VII, VIII)**

Arizona's Uniform Trade Secrets Act ("AUTSA") creates an exclusive cause of action—and displaces conflicting causes of action—for claims based on the misappropriation of trade secrets. *Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 546 (Ariz. 2014); A.R.S. § 44-407.  The Arizona Supreme Court has explained that A.R.S. § 44-407 "displaces only conflicting tort claims for 'misappropriation' of a 'trade secret,' terms AUTSA specifically defines, and leaves undisturbed claims 'that are not based on misappropriation of a trade secret.'" *Orca*, 337 P.3d at 547.  In *Orca*, the Arizona Supreme Court held that § 44-407 does not broadly displace all common-law claims for misuse of confidential information that does not fall within AUTSA's definition of a trade secret. *Id.*  Because the Plaintiff's claim was not limited to trade secrets, but also based on unfair competition from learning "confidential and trade secret information about Orca," it was not preempted. *Id.* at 546, 548.  The *Orca* Court specifically acknowledged that the AUTSA does not include the uniformity directive included in the Uniform Trade Secrets Act and adopted by other states. 337 P.3d at 549.  As such, it did not feel compelled to follow other courts' views. *Id.*

Because the AUTSA does not preempt claims that may be outside the scope of the AUTSA's definitions of "misappropriation" and "trade secret," the question is whether any of the claims that Defendant seeks to dismiss as preempted may encompass conduct or information beyond "misappropriation of trade secrets."

*Breach of Duty of Loyalty, Breach of Fiduciary Duty, and Trespass to Chattels:* As pleaded, these claims could cover broader conduct or information than misappropriation of trade secrets.  The breach of duty claims are based not only on Singhal's conduct related to the Modulus source code, but also his conduct in failing to return and safeguard other documentation and related software.  To the extent these claims are based on misappropriation of trade secrets, they are, of course, preempted.  However, whether information constitutes a trade secret is a question of fact. *Gordon Grado M.D., Inc. v.*

*Phoenix Cancer & Blood Disorder Treatment Inst. PLLC*, 603 F. Supp. 3d 799, 809 n.4 (D. Ariz. 2022). Because, as pleaded, these claims could plausibly encompass information or broader conduct than that created under the trade secret definition, the claims cannot be entirely preempted at the motion to dismiss stage.

*Civil Conspiracy to Commit Trade Secret Theft:* The civil conspiracy to commit trade secret theft claim, however, appears exclusively based on misappropriation of a trade secret. As pleaded, this claim appears directed only at trade secrets and does not encompass any conduct or information beyond the source code. Plaintiff does not explain what, if any, facts relevant to this claim fall outside the scope of the AUTSA's definitions for "misappropriation of a trade secret." The claim refers exclusively to actions taken with regard to Modulus's trade secrets. (Doc. 1 at 33-34.) At oral argument, while Plaintiff highlighted the aspects of the three previously discussed claims that fell outside the scope of the AUTSA, it did not include any information relevant to this claim. Because no aspect of this claim extends beyond "misappropriation of a trade secret," it is preempted.

### B. Intentional Interference with a Business Expectancy (Count IX)

The motion to dismiss is denied as to the intentional interference with a business expectancy claim because Plaintiff has properly pleaded all elements of the claim. The elements for an intentional interference with a business expectancy claim are: (1) existence of a business expectancy; (2) knowledge of the expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the expectancy; (4) resultant damage to the party whose expectancy has been disrupted; and (5) improper motive or means in the interference. *Miller v. Servicemaster by Rees*, 851 P.2d 143, 146 (Ariz. Ct. App. 1992). Defendant contends that Plaintiff has failed to allege the existence of a valid business expectancy, actual loss or termination of the expectancy, or resultant damage.

Modulus alleges the existence of a valid business expectancy by identifying a class of clients with which it claims Quintzy and Singhal interfered with business. Modulus also specifically identifies a valid business expectancy in existing client, Bitsmo. (Doc. 1 at 4.)

Modulus also generally alleges a business expectancy in its current and prospective clients. This alone is sufficient to satisfy the first element, especially in light of Singhal's familiarity with Modulus and its clients. *See, e.g.*, *Stoyanof v. Crocodiles Not Waterlilies, L.L.C.*, 2012 WL 1302485, at *10 (D. Ariz. Feb. 16, 2022) (finding that an expectancy "in the animation industry" was sufficient to meet the business expectancy element); *True Freight Logistics LLC v. Global Tranz Enters. Inc.*, 2019 WL 11840292, at *4 (D. Ariz. Jan. 11, 2019) (finding an assertion that defendant interfered with business of existing customers sufficient, "given [Plaintiff's]] claim that [Defendant] was aware of the entities with whom [Plaintiff] did business").

Plaintiff also properly alleges causation. Modulus must allege intentional interference inducing or causing a breach or termination of the expectancy. Plaintiff plausibly does so, stating "upon information and belief, the underlying source code for the Quintzy Derivatives Exchange was previously developed, programmed and built during Singhal's engagement under the 2018 Agreement" and "Quintzy has offered for sale and/or sold the Quintzy Spot Exchange Software and/or the Quintzy Derivatives Exchange to various prospective clients and/or actual clients of Modulus." (Doc. 1 at 13.) This alleges that Singhal and/or Quintzy sold the allegedly misappropriated products to the class of clients in which Modulus had a business expectancy. The causation element is further alleged where Plaintiff states, "Singhal and/or Quintzy intentionally interfered with these prospective deals that Modulus was negotiating relating to spot and derivatives exchanges" and "[t]he result is that the prospective deals for the software were disturbed." (Doc. 1 at 41.)

Lastly, the loss of current and potential clients "supports an inference that [Modulus] was damaged." *True Freight*, 2019 WL 11840292, at *4. Although Defendant claims that "all Plaintiff does is allege it lost business," the Complaint specifically states that "the prospective deals for the software were disturbed through the improper action on the part of Singhal and/or Quintzy." (Doc. 1 at 41.) While these allegations are perhaps not as detailed as they could be, the allegation that Singhal and Quintzy sold the misappropriated

products to existing or prospective customers and that improper conduct disturbed prospective deals, at the very least, supports an inference that Modulus was harmed by Singhal and/or Quintzy's conduct. That is sufficient to survive a 12(b)(6) motion.

### C. False Advertising (Count XI)

The motion to dismiss is granted with leave to amend as to the false advertising claim. Plaintiff has not provided sufficient factual meat to the bones of the False Advertising claim. It is true, as Plaintiff notes, that the General allegations provide some information from which at least some of the elements of an False Advertising claim could be considered to be alleged. But there is not, in this court's judgment at least at this point, sufficiently clear factual allegations as to some of the elements, to make the claim plausible. False advertising under the Federal Lanham Act requires pleading (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result[,] either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

It is not clear whether the heightened pleading standard under Rule 9 applies to false advertising claims. But, even accepting all of the Plaintiff's alleged facts as true, Plaintiff has not sufficiently alleged what harm has resulted from alleged false statements and/or proximate cause between false statements and such harm. Deficiencies in a complaint cannot be supplied by allegations in the Response on a motion to dismiss. The False Advertising claim (Count XI) therefore is dismissed with leave to amend the claim within thirty days of the date of this Order.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss Counts IV, VI, VII, VIII, IX, and XI for failure to state a claim (Doc. 32) is **GRANTED** in part and **DENIED** in part. It is granted with respect to Counts IV and XI only. It is denied in all

other respects.

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count XI – False Advertising of the Complaint within thirty days of the date of this Order.

Dated this 20th day of September, 2023.

_____
G. Murray Snow
Chief United States District Judge