**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Modulus Global Incorporated,<br><br>   Plaintiff,<br><br>v.<br><br>Quintzy FZE LLC, et al.,<br><br>   Defendants. | No. CV-22-01457-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Attorney Fees (Doc. 102). The Court previously granted Plaintiff's Motion for Entry of Default Judgment Against Defendants Quintzy FZE LLC, Bloxeo Technology Inc., Efficacious Solutions PVT Ltd., Ankit Singhal, Rajeev Sharma, Techroo, Inc., Ethan Kang, and Chan Yang Choi. (Doc. 100 at 11). The Court awarded Plaintiff reasonable attorneys' fees and costs to be proven in a separate motion. (*Id.*). For the reasons stated herein, the Motion is granted in the amount of $193,953.73.

**I.      Entitlement to Attorney Fees**

   **a.  Lanham Act Claims**

Defendants assert that Plaintiff is not eligible to recover attorney fees because Plaintiff elected to seek statutory damages under the Lanham Act, 15 U.S.C. § 1117(c). (Doc. 110 at 2). Plaintiff, however, is both eligible and entitled to recover attorney fees. "Pursuit of [statutory] damages under § 1117(c) precludes a party only from recovering 'actual damages and profits' under § 1117(a), not attorney's fees." *Kaloud, Inc. v. Shisha*

*Land Wholesale, Inc*., 741 F'Appx. 393, 397 n.2 (9th Cir. 2018).

### i. Exceptional Case Under § 1117(a)

Defendants next assert that Plaintiff is not eligible to recover attorney fees because this case does not qualify as exceptional under § 1117(a). (Doc. 110 at 3). Indeed, § 1117(a) provides that "[t]he court in exceptional [trademark] cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit held that "district courts analyzing a request for fees under the Lanham Act should examine the 'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd*., 839 F.3d 1179, 1181 (9th Cir. 2016) (internally citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-54 (2014)) (citing *Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994)). "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1180. The nonexclusive factors to consider in determining if a case is "exceptional" includes "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 1181.

"Courts applying the *Octane Fitness* analysis commonly find that willful infringement, in conjunction with non-participation in litigation, makes a case 'exceptional.'" *ADG Concerns, Inc. v. Tsalevich LLC*, No. 18-cv-00818, 2018 WL 4241967, at *13 (N.D. Cal. Aug. 31, 2018) (collecting cases); *see also Syntex Healthcare Products Co., Ltd. v. McCreless Enter., LLC*, No. EDCV 21-593, 2023 WL 4503528, at *12 ("Courts often find that a case may be deemed 'exceptional' within the meaning of the Lanham Act by virtue of a Defendant's decision to ignore legal proceedings, necessitating a default judgment.").

As this Court previously held, Plaintiff diligently prosecuted this matter since its

inception, while Defendants, who received proper service, failed to comply with the Court's Orders and otherwise failed to defend this action. (Doc. 100 at 9). Further, the Court awarded statutory damages under the Lanham Act in the amount of $300,000 per violation, (*Id.*), consistent with a determination that the use of the counterfeit mark was willful. *See* 15 U.S.C. § 1117(c) ("[A]n award of statutory damages . . . not less than $1,000 or more than $200,000 per counterfeit mark . . . or, if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark."). By the preponderance of the evidence, *see SunEarth, Inc.*, 839 F.3d at 1181, the Court finds that Defendants willfully infringed Plaintiff's trademarks and engaged in litigation-related misconduct by not defending this case despite being on notice. As such, the case is exceptional, and attorney fees are warranted.

### b. Non-Lanham Act Claims

Defendants argue that Plaintiff is entitled to only the attorney fees associated with the two trademark claims. (Doc. 110 at 3). Plaintiff brought twelve claims against Defendants. (Doc. 1 at 24-45). The Court denied Defendants' Motion to Dismiss (Doc. 32) as to ten out of the twelve counts and granted as to Counts IV and XI only, with leave to amend Count XI—false advertising. (Doc. 45 at 6-7). Plaintiff filed an Amended Complaint, which included the ten counts that survived the Motion to Dismiss, as well as an amended Count XI for false advertising. (Doc. 50). After the Clerk of Court entered default against all Defendants, the Court granted Plaintiff's Motion for Entry of Default Judgment against Defendants on all remaining counts. (Doc. 100 at 11). The Court also awarded Plaintiff their reasonable attorney fees. (*Id.*).

As an initial matter, Plaintiff is entitled to attorney fees on the four non-Lanham Act claims that provide independent bases for recovery of attorney fees. *See Love v. Mail on Sunday*, No. CV05-7798, 2007 WL 2709975, at *3 (C.D. Cal. Sept. 7, 2007) (awarding attorney fees to the prevailing party for Lanham Act claims and non-Lanham Act claims that provided an independent statutory or contractual basis for the award of attorney fees). Here, Counts I and II for breach of contract, (Doc. 50 at 26, 28), provide an independent

basis for reasonable attorney fees under A.R.S. § 12-341.01. *See* A.R.S. § 12-341.01(A) ("In any contested action arising out of a contract . . . the court may award the successful party reasonable attorney fees."). Additionally, Counts III and IV for misappropriation of trade secrets, (*Id.* at 32, 34), provide an independent basis for reasonable attorney fees if the misappropriation was made in bad faith or the trade secret was willfully and maliciously misappropriated. *See* 18. U.S.C. § 1836(b)(3)(D); *see also* A.R.S. § 44-404. Because Plaintiff obtained a default judgment against Defendants and these claims provide a basis for attorney fees, Plaintiff is entitled to an award. *See Million v. Pindernation Holdings LLC*, No. CV-23-00072, 2023 WL 3585237, at *1 (D. Ariz. May 22, 2023) (awarding attorney fees to a plaintiff who obtained a default judgment on two causes of action that allow the award of reasonable attorney fees); *see also Castro-Vega v. Waible*, No. 07-675, 2008 WL 2704457, (D. Or. July 1, 2008) ("Based on the Default Judgment, plaintiff is the prevailing party and, therefore, is entitled to an award of reasonable attorney fees and costs.").

Plaintiff is also entitled to attorney fees on the remaining non-Lanham Act claims. Where, as here, a party prevails on Lanham Act claims and non-Lanham Act claims, recovery under § 1117(a) is limited to work related to the Lanham Act claims. *Gracie v. Gracie*, 217 F.3d 1060, 1069 (9th Cir. 2000). However, where a plaintiff's claims "involve a 'common core of facts' or are based on 'related legal theories,' it is 'difficult to divide the hours expended on a claim-by-claim basis.'" *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1157 (9th Cir. 2002) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). As such, where "Lanham Act claims and non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims," a party may recover on all claims. *Gracie*, 217 F.3d at 1069. Despite the "impossibility of making an exact apportionment," a district court still retains its duty to "make some attempt to adjust the fee award in an effort to reflect an apportionment . . . [unless] even an estimated adjustment would be meaningless." *Id.* at 1070.

Here, five counts remain that are neither Lanham Act claims nor have an

independent basis for attorney fees: (1) Count V, breach of duty of loyalty; (2) Count VI, breach of fiduciary duty; (3) Count VII, trespass to chattels; (4) Count VIII intentional interference with a business expectancy; and (5) Count XI, unfair competition and trademark infringement. (Doc. 50 at 37-40, 46). All of Plaintiff's claims involve a core set of facts: Defendant Singhal used the underlying source code that he developed for Modulus in his development of the Quintzy Spot Exchange Software and/or Quintzy Derivatives Exchange that offers crypto exchange products in direct competition with Modulus at a cheaper cost. (Doc. 45 at 2). The facts underlying the five remaining claims are "so intertwined" that it is impossible to differentiate between work done on these claims and the Lanham Act claims. *See Cairns*, 292 F.3d at 1157. For example, underlying Counts V and VI are assertions about Defendant Singhal's duties and related obligations as an agent for Modulus, as well as assertions that Singhal breached those duties and obligations by forming Quintzy and repurposing underlying source code to compete with Modulus. (Doc. 50 at 37-39). Similarly, underlying Count VII and VIII are assertions about Defendants using Modulus source code and business relationships without permission and to compete with Modulus. (*Id.* at 39-41). Finally, Count XI is a trademark infringement claim under Arizona state law, rather than the federal Lanham Act, but is otherwise the same claim based on the same factual allegations. (*Id.* at 46). The factual circumstances do not differ from the circumstances underlying the Lanham Act claims. As such, it is impossible to differentiate between the work on specific claims and thus impossible for the Court to apportion the fees between the Lanham Act and non-Lanham Act claims.

## II.    Calculation of Fees

The Ninth Circuit set forth the steps a district court should follow to determine the amount of an attorney fee award under the Lanham Act:

> When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate . . . Next, in appropriate cases, the district court may judge

the 'presumptively reasonable' lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69070 (9th Cir. 1975), that have not been subsumed in the lodestar calculation.

*Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir. 1993) (cleaned up). The *Kerr* factors include the following: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr*, 526 F.2d at 70. "[I]t is well established a court has discretion to adjust the lodestar upward or downward." *Whitaker v. SMB Grp.*, No. 22-55668, 2023 WL 5842311, at *1 (9th Cir. 2023).

Plaintiff seeks $209,194.75 in attorney fees: $56,784.50 paid to the Jaburg Wilk law firm ("Jaburg Wilk") and $152,410.25 paid to the Allen Dyer Doppelt + Gilchrist law firm ("Allen Dyer"). (Doc. 102 at 1). Defendants challenge the reasonableness of Plaintiff's billing practices and argue that Plaintiff engaged in impermissible block billing, unnecessary travel expenses, higher billing increments, excessive time allocation, and duplicative work. (Doc. 110 at 5-7). Each objection is addressed in turn below.

### a. Block Billing

Defendants argue that both firms representing Plaintiff engaged in block billing. (*Id.* at 5-6). "Block billing is the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007). District courts have "authority to reduce hours that are billed in block format," as the practice makes it difficult for courts to determine how much time was spent on particular work. *Id.* at 948. As evidence of Plaintiff's alleged block billing, Defendants

- 6 -

point to a "Bill History" report produced by Allen Dyer, which is a one-page summary of the monthly fees and costs charged to Modulus during the representation—not block billing. (*See* Doc. 110 at 6) (citing Doc. 102-2 at 14). Defendants fail to identify any other instance of block billing. Although certain entries on the attorneys' logs include multiple tasks, those entries were only one of several made in a day and often included notes in the descriptions about how much time was spent on each sub-task. (*See* Doc. 102-2 at 16) ("07/07/22; 0.50; $237.5; Online research into Bloxeo Technologies Inc and imaging of key documents (0.3); memo to associate M. Dangond to obtain corporate info from British Columbia (0.2)"). To the extent Defendants consider entries with multiple tasks "block billing," it does not warrant a reduction in attorney fees.

### b. Unnecessary Travel Expenses

Defendants next seek a reduction in attorney fees for travel time billed by Allen Dyer. (Doc. 110 at 6). The Ninth Circuit permits recovery for travel expenses. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002). "It is customary and routine for commercial attorneys working on an hourly rate basis, including insurance attorneys, to charge their clients for their time necessarily traveling on the matter, whether or not other legal work is done on the airplane." *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. CV-14-02001, 2018 WL 2322783, at *2 (D. Ariz. May 22, 2018); *see also Graves v. Penzone*, No. CV-77-00479, 2020 WL 1984022, at *9 (D. Ariz. Apr. 27, 2020) (finding $21,858.30 in Plaintiffs' counsel's air travel time fees reasonably necessary to class counsel's representation). Here, Defendants object to the eleven hours Allen Dyer billed for its attorney's round-trip travel from Miami to Phoenix for a hearing on a motion to dismiss. (Doc. 110 at 6) (citing Doc. 102-2 at 34). Defendants argue that Plaintiff's local counsel should have appeared for the hearing. (*Id.*). In Plaintiff's Reply, Plaintiff notes that the time it would have taken to prepare local counsel to handle the motion would have "easily overshadowed the amount of travel expenses incurred by virtue of Florida counsel handling the argument." (Doc. 115 at 7). Since the travel was limited in nature and reasonably necessary to Plaintiff's counsel, the objection is overruled.

### c. Higher Billing Increments

Defendants argue that because Allen Dyer bills in quarter-hour increments, the short communications which would traditionally be billed at a rate of a tenth of an hour are excessive. (Doc. 110 at 8). Indeed, where a district court determines billing by the quarter-hour resulted in a request for compensation for hours not reasonably expended on the litigation, the district court may impose an across-the-board reduction on hours requested. *See Welch*, 480 F.3d at 949 (affirming a reduction on hours requested where the district court "found the hours were inflated because counsel billed a minimum of 15 minutes for numerous phone calls and e-mails that likely took a fraction of the time"); *see also Robinson v. Plourde*, 717 F.Supp.2d 1092, 1100-01 (D. Haw. 2010) (reducing an attorney's hours by 20 percent to offset the excessive hours resulting from the practice of billing in quarter-hour increments). Plaintiffs respond that the firm "expressly contracted with Modulus to bill in quarter-hour increments" and that it "simply creates a slightly greater variation in the actual (non-incremental) effective rate compared to one-tenth-hour increments." (Doc. 115 at 8).

Expressly contracting for a quarter-hour rate does not preclude the inflation of hours. It appears Allen Dyer attorneys did not always bill in quarter-hour increments. (*See* Doc. 102-2 at 22-25). It also appears Allen Dyer attorneys attempt to prevent inflated hours by including details regarding sub-increments of time in the descriptions for time billed at the quarter-hour increment. (*See id.* at 25-26, 57-58, 77-78). However, this practice is not consistent, and therefore, fails to mitigate inflated billing. For example, there are several time entries for the review or preparation of an email that allegedly took 0.25 hours. (*See id*. at 26, 36, 36, 39, 58, 79). In contrast, Jaburg Wilk attorneys frequently billed 0.10 to 0.20 hours for emails. (*See* Doc. 102-1 at 27, 51, 58, 64). Assuming attorneys from both firms spend similar amounts of time drafting emails, on average, the practice of billing in quarter-hour increments resulted in an inflated claim for attorney fees. To offset the excessive hours, while also taking into consideration the fact that Allen Dyer did not exclusively bill in quarter-hour increments, the Court imposes an across-the-board

reduction of 10 percent on hours billed by Allen Dyer attorneys.

### d. Excessive Time Allocation and Duplicative Work

Defendants argue that Plaintiff's counsel spent an excessive amount of time drafting the Complaint and the Response to the Motion to Dismiss. (Doc. 110 at 4-5). Defendants also argue that Plaintiff's billing reflects duplicative work. (*Id.* at 7). Upon review, Plaintiff's counsel spent neither an excessive amount of time on its briefing nor engaged in unreasonably duplicative work. As such, the Court declines to reduce Plaintiff's hours billed on these grounds.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Attorney Fees (Doc 102) is **granted in part**. Plaintiff is hereby awarded attorney fees in the amount of $193,953.73 ($56,784.50 paid to the Jaburg Wilk law firm and $137,169.23 paid to the Allen Dyer Deppelt + Gilchrist law firm). The Clerk of Court is directed to enter judgment accordingly.

Dated this 18th day of March, 2025.

_____
G. Murray Snow
Senior United States District Judge